UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY A. ALBARRAN,

    Plaintiff,

v.                                    Case No. 1:06-CV-463
                                      Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on March 3, 1959, and attended school through the 11th grade (AR 87, 113).[1] Plaintiff alleged that she had been disabled since July 21, 1999 (AR 87). She had previous employment as a factory worker, fast food worker and nursing home worker (laundry) (AR 108). Plaintiff identified her disabling conditions as lower back problems, arthritis in the right foot and hands, and constant pain (AR 107).

Plaintiff has filed three previous applications for DIB and SSI. On November 30, 1993, plaintiff applied for both DIB and SSI (AR 16). These applications were denied (AR 16). On August 17, 1997, plaintiff filed another set of applications for DIB and SSI, which were also denied (AR 16). Plaintiff requested an administrative hearing, but the request was dismissed on April 21,

---

[1] Citations to the administrative record will be referenced as (AR "page #").

1998 when she failed to appear for the scheduled hearing (AR 16). Plaintiff filed a third set of applications for DIB and SSI on November 16, 2000 (AR 16). These were denied initially and by an administrative law judge (ALJ) in a decision entered August 8, 2002 (AR 16).

Plaintiff filed the current applications for DIB and SSI on January 7, 2003 (AR 16). After administrative denial of these applications, an ALJ reviewed plaintiff's claims *de novo* and entered a decision denying these claims on April 4, 2005 (AR 16-27). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the

record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

3

number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff has not engaged in substantial gainful activity since her alleged onset date of July 21, 1999 (AR 17). The ALJ found that plaintiff was insured for DIB through December 31, 2003, and must be deemed disabled on or before that date to receive DIB (AR 26).[2] Second, the ALJ found that plaintiff had severe impairments of "degenerative disc disease of the lumbosacral spine, major depression, generalized anxiety disorder, and mild mental retardation" (AR

---

[2] In an earlier portion of the decision, the ALJ stated that plaintiff was insured for DIB through December 31, 1999 (AR 17). Defendant does not explain this discrepancy. The court notes that the ALJ decision dated August 8, 2002, stated that plaintiff was insured for DIB through the date of that decision (AR 32). Accordingly, the court adopts the later last insured date of December 31, 2003.

4

26).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 26).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) as follows:

> to lift or carry 20 pounds occasionally and 10 pounds occasionally; perform occasional climbing or [sic] ladders or [sic] stairs, bending, twisting, kneeling, stooping, or crouching.  Furthermore, she is limited to simple routine tasks and can have only minimal and occasional interaction with co-workers or supervisors and no interaction with the general public.

(AR 26).  The ALJ found that plaintiff could not perform her past relevant work (AR 26).  The ALJ also found that plaintiff's statements regarding her impairments and their impact on her ability to work were not entirely credible (AR 26).

At the fifth step, the ALJ found that plaintiff could perform a significant number of light jobs in the national economy, including assembler (3,000 jobs), inspector (3,000 jobs), packager (2,500 jobs), custodian (4,500 jobs) and general clerks (3,000 jobs) (AR 27).  Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 27).

**III.  ANALYSIS**

Petitioner raises one issue on appeal:

**The ALJ committed reversible error by not properly considering whether plaintiff met Listing 12.05(C).**

I agree with plaintiff and, for the reasons below, recommend that this matter be reversed and remanded pursuant to sentence four, 42 U.S.C. § 405(g).

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs*., 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Listing 12.05C provides as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 CFR Pt. 404, Subpt. P, App. 1, Listing 12.05.

Here, the ALJ found that petitioner suffered from a severe impairment of "mild mental retardation" based upon the opinion of Richard L. King, Ed. D. (AR 26). In an independent examination performed on January 3, 2005, Dr. King found that plaintiff had a verbal IQ of 70, a performance IQ of 73 and a full scale IQ of 69 (AR 517-21). The ALJ gave this opinion limited weight "due to the lack of supporting evidence and documentation of an onset for moderate depression" (AR 24).

As an initial matter, the ALJ did not give sufficient reasons for summarily dismissing Dr. King's test results and opinions. The ALJ does not point out any particular insufficiency in the manner in which Dr. King tested plaintiff's IQ, in the only IQ test on record. In addition, the ALJ apparently agreed with Dr. King's diagnosis of mild mental retardation, in addition to major depressive disorder and generalized anxiety disorder (AR 520). Indeed, the ALJ found that plaintiff suffered from severe impairments of "major depression, generalized anxiety disorder, and mild mental retardation" (AR 26).

Plaintiff's IQ test scores (i.e., verbal IQ of 70 and full scale IQ of 69), coupled with her additional severe impairments of degenerative disc disease of the lumbosacral spine, major depression, and generalized anxiety disorder, were consistent the requirements of Listing 12.05C. However, to completely meet the requirements of Listing 12.05C, plaintiff must also demonstrate that she experienced "significantly subaverage general intellectual functioning with deficits in adaptive functioning" before age 23. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (recent

amendments to the regulations clarify that a claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria). Evidence in the record suggests that plaintiff may have experienced these deficits before age 23. For example, plaintiff reported to Dr. King that while she was not enrolled in special education classes, she required speech therapy in 3rd or 4th grade and had a history of learning delays (AR 518-19). In addition, Dr. King rated her reading skills at less than a fourth grade level (AR 519).

While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). The ALJ has failed to fully articulate his analysis in this case. The ALJ made no finding that plaintiff met, or failed to meet, the diagnostic description of mental retardation under § 12.05, and gave only the most cursory explanation for rejecting Dr. King's IQ test scores. The ALJ recognized plaintiff had limitations posed by her mental retardation, by limiting her to "simple routine tasks" and having "only minimal and occasional interaction with co-workers or supervisors and no interaction with the general public" (AR 26). Such limitations are not inconsistent with someone meeting the diagnostic definition of mental retardation under § 12.05.

In summary, factual issues exist in this case as to whether (1) plaintiff met the diagnostic definition of mental retardation and (2) the accuracy of the IQ test administered by Dr. King. This court cannot perform fact finding on these issues in this administrative appeal. *See Brainard*, 889 F.2d at 681 (this court does not review the evidence *de novo*, make credibility determinations or weigh the evidence). Accordingly, the Commissioner record should re-evaluate

the record to determine whether plaintiff met the requirements of mental retardation under Listing 12.05C.

**IV.     Recommendation**

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of plaintiff's claim consistent with this report and recommendation.


Entered:  July 11, 2007                              /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).